WO              IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


MARIA BAUNSGARD,                    )
                                    )
                    Plaintiff,      )
                                    )
            vs.                     )
                                    )
CAROLYN W. COLVIN, acting Commissioner,)
Social Security Administration,     )
                                    )        No. 2:14-cv-0111-HRH
                    Defendant.      )
_____)


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff has timely filed her opening brief,[1]

to which defendant has responded.[2]  Oral argument was not requested and is not deemed

necessary.


<u>Procedural Background</u>

Plaintiff is Marie Baunsgard.  Defendant is Carolyn W. Colvin, acting Commissioner

of Social Security.

_____

[1]Docket No. 12.

[2]Docket No. 14.

On March 11, 2011, plaintiff filed an application for disability benefits under Title II of the Social Security Act.  Plaintiff alleged that she became disabled on September 2, 2010.  Plaintiff alleged that she was disabled because of a nerve on the top of her head, a proteinaceous cyst, which causes debilitating headaches.  Plaintiff's application was denied initially and upon reconsideration.  After a hearing on October 23, 2012, an administrative law judge (ALJ) denied plaintiff's claims.  On November 27, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's November 1, 2012 decision the final decision of the Commissioner.  On January 21, 2014, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

<u>General Background</u>

Plaintiff was born on November 27, 1959.  She was 52 years old at the time of the hearing.  Plaintiff is married and has adult-age children.  Plaintiff has a GED.  Plaintiff's past relevant work includes work as a receptionist, a benefits clerk, and a case aide.

<u>The ALJ's Decision</u>

The ALJ first found that plaintiff "last met the insured status requirements of the Social Security Act on June 30, 2011."[3]

---

[3]Admin. Rec. at 14.   To establish entitlement to Title II benefits, plaintiff needed to prove that she was disabled on or before June 30, 2011, her last date of insured status. <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engage[d] in substantial gainful activity during the period from her alleged onset date of September 2, 2010 through her date of last insured of June 30, 2011...."[5]

At step two, the ALJ found that "[t]hrough the date last insured," plaintiff "had the following medically determinable impairments:   marijuana dependence, depressive

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 14.

disorder, and migraine headaches...."[6] But, the ALJ found that "[t]hrough the date last insured," plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, [plaintiff] did not have a severe impairment or combination of impairments...."[7]

The ALJ found plaintiff's statements as to the frequency and intensity of her headaches[8] less than credible based on plaintiff's report of daily activities, because medication has been relatively effective in controlling her headache symptoms, because plaintiff did not follow-up to change her headache medication, because she never saw a specialist regarding her headaches, because on numerous occasions she did not complain of headaches when seeing her primary care physician, and because "the objective findings in the record do not confirm the claimant's allegations."[9] The ALJ also found that plaintiff's

---

[6]Admin. Rec. at 14.

[7]Admin. Rec. at 14.

[8]At the hearing, plaintiff testified that she currently has headaches 1-3 times per week and that is about how frequent they have been over the last couple of years. Admin. Rec. at 34. Upon further questioning, plaintiff testified that since about May 2011, she had 1-3 headaches per week and from May 2010 to May 2011, she had one about every week, maybe every two weeks. Admin. Rec. at 43. She testified that when she gets a headache, she "go[es] into my bedroom. I make it as dark as possible.... I shut off the TV, shut off the lights ... and I try very hard to take a nap." Admin. Rec. at 36.

[9]Admin. Rec. at 16-17.

headaches would not prevent her from working because plaintiff testified that she stopped

working because of a business-related layoff, not because of allegedly disabling

impairments, and there is no evidence that plaintiff's headaches became worse after the

layoff.[10]

As for plaintiff's marijuana dependency,[11] the ALJ found that "the record does not

confirm that the claimant had been advised to use marijuana to assist" with sleep and

depression.[12]  As for plaintiff's depressive disorder, the ALJ found that "the record reflects

limited treatment for this impairment."[13]  The ALJ also noted that plaintiff "has refused

psychiatric treatment and medication...."[14] The ALJ also found that plaintiff had "provided

inconsistent information regarding her symptoms."[15]  The ALJ noted that plaintiff told Dr.

---

[10]Admin, Rec. at 17.

[11]Plaintiff testified that she started smoking marijuana after her son died in 2001 "to deal with the depression", that she "stopped for a few years" but then started again when she was going through menopause "to help me sleep[,]" and that she only smokes marijuana in the evening as a means to help her sleep.  Admin. Rec. at 40.  Dr. Kundranda, plaintiff's primary care physician, counseled her against using marijuana as a sleep aid. Admin. Rec. at 242.

[12]Admin. Rec. at 18.

[13]Admin. Rec. at 18.

[14]Admin. Rec. at 18.

[15]Admin. Rec. at 18.

Steingard[16] both that "her depression only lasts for days at a time" and that her "depression has never ever left."[17]   The ALJ also noted that "Dr. Steingard's examination did not confirm persistent mental limitations."[18]

The ALJ rejected the opinion of Dr. Kundranda[19] because "the record does not reflect consistent reports of headaches" of the severity and frequency found by Dr. Kundranda.[20] The ALJ also rejected Dr. Kundranda's opinion because he did "not indicate with any specificity the limitations to the claimant's concentration, attention, and memory related to her headaches."[21]   The ALJ gave great weight to Dr. Ottney's[22] opinion because it was

---

[16]On January 11, 2012, Sharon Steingard, D.O., did a psychiatric evaluation.  Admin. Rec. at 283-289.

[17]Admin. Rec. at 18.

[18]Admin. Rec. at 18.

[19]Dr. Kundranda treated plaintiff from November 30, 2010 through October 10, 2102. Admin. Rec. at 235-236, 238-239, 241-242, 245-246, 248-249, 268-269, 328, 395-404, 408-413, 417-419, 423-425, 433-440 & 444-447.  On April 26, 2012, Dr. Kundranda completed a headache questionnaire on which he indicated that he had treated plaintiff for headaches since May 2010 and that she has headaches ranging from daily to twice a month.  Admin. Rec. at 328.  Dr. Kundranda opined that plaintiff's migraine headaches affect her concentration, attention, memory, and capacity to work and that they would result in her being absent from work 5 days per month.  Admin. Rec. at 328.

[20]Admin. Rec. at 19.

[21]Admin. Rec. at 19.

[22]On July 11, 2011, Elizabeth Ottney, DO, examined plaintiff and opined that plaintiff did not have any conditions that would impose any limitations for 12 continuous months. (continued...)

consistent with her examination.[23]  The ALJ also gave great weight to Dr. Steingard's[24]

opinion because it was consistent with her examination.[25]  The ALJ gave great weight to Dr.

Wavak's[26] opinion because it was consistent with Dr. Ottney's examination and the weight

---

[22](...continued)
Admin. Rec. at 256.

[23]Admin. Rec. at 19.

[24]Dr. Steingard opined that plaintiff

> appears capable of understanding directions of varying
> complexity but may have some mild limitations with very
> detailed directions or multitasking.... [Her p]ersistence was
> adequate.  Concentration was limited by a mild degree of
> circumstantiality.  No significant problems with attention were
> noted.  She did not need extra encouragement to complete
> tasks. [Social i]nteraction is not precluded.  She was neat and
> clean.  The hat she was wearing was not particularly obtrusive.
> She was early for the evaluation.  Cognitively, she appears
> capable of making some decisions.  She has an appropriate
> response to a hypothetical emergency situation.  She drives.
> She can be a passenger in a private vehicle.  She complains of
> sedation from her medication but did not appear to be sedated.
> She did not appear to be under the influence of marijuana.
> Because of the marijuana use however, she should not be
> around dangerous or hazardous machinery.  She should not be
> managing benefits.

Admin. Rec. at 288-289.

[25]Admin. Rec. at 19.

[26]On July 20, 2011, Erika Wavak, M.D. opined that plaintiff had no severe medically
determinable impairments.  Admin Rec. at 56.

of the medical evidence.[27]  The ALJ also gave great weight to Dr. Salk's[28] opinion because it was consistent with Dr. Steingard's opinion and the medical evidence of record.[29]

The ALJ considered the opinion of plaintiff's mother[30] but noted that "she [did] not report on the frequency of [plaintiff's] headaches" and that she does not live with plaintiff and "admitted that she was unfamiliar with many of [plaintiff's] daily activities."[31]

The ALJ considered whether plaintiff met the "paragraph B" criteria and concluded that she did not.  The ALJ found that plaintiff had no limitations as to activities of daily living; no limitations as to social functioning; mild limitations as to concentration, persistence, or pace; and no episodes of decompensation.[32]

Because the ALJ found that plaintiff did not have any severe impairments or combinations of impairments, the ALJ concluded that plaintiff "was not under a disability,

---

[27]Admin. Rec. at 19.

[28]On January 30, 2012, Elliot Salk, Ph.D., opined that plaintiff had no restrictions as to activities of daily living, no difficulties in maintaining social functioning, mild difficulties as to maintaining concentration, persistence, or pace; and no episodes of decompensation. Admin. Rec. at 68.

[29]Admin. Rec. at 19.

[30]Plaintiff's mother, Armida Miller completed a third-party function report on October 30, 2011.  Admin. Rec. at 205-212.

[31]Admin. Rec. at 18.

[32]Admin. Rec. at 20.

as defined in the Social Security Act, at any time from September 2, 2010, the alleged onset date, through June 30, 2011, the date last insured...."[33]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

--------

[33]Admin. Rec. at 21.

<u>Discussion</u>

The ALJ made her nondisability determination at step two.  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996).   A step-two impairment "may be found 'not severe <u>only if</u> the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (quoting <u>Smolen</u>, 80 F.3d at 1290).

Plaintiff first argues that the ALJ erred in rejecting Dr. Kundranda's opinion.  Dr. Kundranda opined that plaintiff's headaches affect her concentration, attention, memory, and capacity to work and that they would result in her being absent from work five days per month.[34]  An impairment that would cause a claimant to be absent from work five days per month would be considered severe.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  But, "if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  <u>Id.</u> (quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)).   Dr. Kundranda's opinion was

---

[34]Admin. Rec. at 328.

contradicted by the opinion of Dr. Ottney and thus the ALJ was required to give specific and legitimate reasons for rejecting Dr. Kundranda's opinion.

The ALJ rejected the opinion of Dr. Kundranda because "the record does not reflect consistent reports of headaches" of the severity and frequency found by Dr. Kundranda.[35] The ALJ also rejected Dr. Kundranda's opinion because he did "not indicate with any specificity the limitations to the claimant's concentration, attention, and memory related to her headaches."[36]

Plaintiff argues that there is evidence in the record that she had severe headaches ranging from daily to twice a month and thus the first reason given by the ALJ was not legitimate. Plaintiff points out that her chart notes almost always listed headaches as an "active" problem, even if she did not receive treatment for her headaches each time she saw Dr. Kundranda. But the fact that headaches were listed as an "active" problem says nothing about the frequency or severity of plaintiff's headaches. The ALJ rejected Dr. Kundranda's opinion because his treatment notes did not reflect that plaintiff had frequent, severe headaches.

Plaintiff argues, however, that it is not surprising that Dr. Kundranda's treatment notes did not always mention her headaches because this was a chronic problem and

---

[35] Admin. Rec. at 19.

[36] Admin. Rec. at 19.

chronic long-term medical problems are not always addressed at every appointment. While plaintiff may be correct that chronic problems are not addressed at every appointment, that does not answer the question of whether Dr. Kundranda's treatment notes support his opinion.

As to that question, in 2011 and 2012, plaintiff made several reports to Dr. Kundranda about her headaches.  On February 28, 2011, plaintiff reported that her headaches were not better, that she is getting them almost daily, that the pain was a sharp, shooting pain, that vicodin helped with the pain, but otherwise she just slept until the pain was gone.[37] On April 27, 2011, plaintiff reported that she had recently had a headache with nausea and vomiting.[38]  On May 25, 2011, plaintiff reported that she had recently had a migraine and that the Imitrex helped partially.[39]  On August 4, 2011, plaintiff reported that her headaches had been worse since August 1, 2011.[40]  On December 21, 2011, plaintiff reported that she "[c]ontinues to get headaches even on propranolol."[41]  On January 11,

---

[37]Admin. Rec. at 241.

[38]Admin. Rec. at 245.

[39]Admin. Rec. at 248.

[40]Admin. Rec. at 268.

[41]Admin. Rec. at 398.

2012, plaintiff reported her "[h]eadaches [are] a little better."[42]  On February 29, 2012, plaintiff reported that she was having "[l]ess headaches, dizziness."[43] On May 22, 2012, plaintiff  reported that her headaches are "doing better.  [S]he uses a topical chinese oint[ment] which helps.  Uses occ[asional] vicodin if the headache is very severe."[44]  On July 6, 2012, plaintiff reported that she takes oxycodone only occasionally for her headaches.[45]  On July 11, 2012, plaintiff reported that her "[h]eadaches are stable."[46]  On September 5, 2012, plaintiff reported that her "headaches are still frequent and [she is] having [one] several times per week."[47]

These reports indicate that plaintiff's headaches were painful enough to require treatment with narcotic pain medication.  But, these treatment notes say very little about the frequency of plaintiff's headaches.  There are only a couple references to frequent headaches.  Moreover, these reports seem to indicate that in 2012, plaintiff's headaches were getting better.  Thus,  it was not error for the ALJ to reject Dr. Kundranda's opinion

---

[42]Admin. Rec. at 401.

[43]Admin. Rec. at 411.

[44]Admin. Rec. at 423.

[45]Admin. Rec. at 429.

[46]Admin. Rec. at 433.

[47]Admin. Rec. at 436.

because his treatment notes do not support his opinion as to the frequency of plaintiff's headaches.

The ALJ also rejected Dr. Kundranda's opinion because he did "not indicate with any specificity the limitations to the claimant's concentration, attention, and memory related to her headaches."[48] An ALJ may properly reject a treating physician's opinion if it is "'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)). This was a specific and legitimate reason for rejecting Dr. Kundranda's opinion.

Plaintiff next argues that the ALJ erred in giving great weight to Dr. Ottney's and Dr. Steingard's opinions[49] that plaintiff did not have a disabling condition. What plaintiff seems to be arguing is that these opinions from examining sources cannot constitute substantial evidence to support the rejection of Dr. Kundranda's opinion. While an examining physician's opinion by itself does not constitute substantial evidence supporting the rejection of a treating source's opinion, as discussed above, the ALJ did not simply rely

---

[48]Admin. Rec. at 19.

[49]In her reply brief, plaintiff seems to suggest that she does not take issue with the ALJ's treatment of Dr. Steingard's opinion because it concerned plaintiff's mental capacity and plaintiff is not claiming any "psychological issues as a debilitating problem[.]" Reply Brief at 2, Docket No. 15.

on Dr. Ottney's and Dr. Steingard's opinions to reject Dr. Kundranda's opinion.  Rather, the ALJ gave two specific and legitimate reasons for rejecting Dr. Kundranda's opinion.

Finally, plaintiff argues that the ALJ failed to explain why she was not crediting plaintiff's subjective testimony as to the frequency and severity of her headaches. However, the ALJ gave several reasons as to why she found plaintiff's subjective testimony less than credible.  The ALJ found plaintiff's statements less than credible based on plaintiff's report of daily activities, because medication had been relatively effective in controlling her headache symptoms, because plaintiff did not follow-up to change her headache medication, because she never saw a specialist regarding her headaches, because on numerous occasions plaintiff did not complain of headaches when seeing her PCP, and because the "objective findings in the record do not confirm the claimant's allegations."[50]

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity

---

[50]Admin. Rec. at 16-17.

of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  Id. (quoting Smolen, 80 F.3d at 1282).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  Id. (quoting Smolen, 80 F.3d at 1282).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]"  Id. (internal citations omitted).  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating

capacities that are transferable to a work setting[.]"  Id. at 1112-13 (internal citations omitted).  "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Id. at 1113.

The first reason given by the ALJ was based on plaintiff's report of daily activities. The ALJ noted that plaintiff "cleans her house and her yard.  She can do laundry.  She noted that she is able to lift her grandkids, water bottles, and groceries.  She is able to shop for the family. She can drive if she does not have a headache.  She goes to the swap meet or the mall."[51]  This was not a clear and convincing reason to find plaintiff's statements less than credible, but as will be discussed below, the other reasons given by the ALJ were clear and convincing and thus, the ALJ's credibility finding was supported by substantial evidence despite this error.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

The second reason given by the ALJ was that medication had been relatively effective in controlling plaintiff's headache symptoms.  Impairments that can be controlled effectively with medication are not disabling. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  This was a clear and convincing reason to find plaintiff's statements regarding the frequency and intensity of her headaches less than credible.  The

---

[51]Admin. Rec. at 16.

record indicates that plaintiff's headaches were somewhat controlled by medication and that her headaches became less frequent as her blood pressure was better controlled with medication.

The third reason given by the ALJ was that plaintiff did not follow-up to change her headache medication.  On September 5, 2012, Dr. Kundranda noted that plaintiff had been "evaluated by Dr. Kari Patterson and was tried on flexeril for the tension type [headaches] and on Imitrex.  She does not feel these were effective.  She did not follow up with her."[52] "The ALJ is permitted to consider lack of treatment in his credibility determination."  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)  This was a clear and convincing reason to find plaintiff's statements less than credible because if plaintiff's headaches were as severe as she claims, she would have gone back to Dr. Patterson to attempt to find a medication that worked better than those originally prescribed by Dr. Patterson.  The fact that she did not negatively impacts her credibility.

The fourth reason given by the ALJ was that plaintiff never saw a specialist regarding her headaches.  This was also a clear and convincing reason to find plaintiff's statements less than credible because the only specialist plaintiff ever saw for her headaches was Dr. Patterson, whom she saw prior to her alleged onset date.  Again, if plaintiff's headaches were as debilitating as she claims, it is reasonable to assume that she

--------

[52]Admin. Rec. at 436.

would have sought treatment from a specialist and her failure to do so adversely impacts her credibility.

The fifth reason given by the ALJ was that on numerous occasions plaintiff did not complain of headaches when seeing her PCP.  The ALJ noted that plaintiff did not mention her headaches at office visits in "June 2011, July 2011, and September 2011," and January 2012, February 2012, March 2012, April 2012, and October 2012.[53]  "One strong indicator of the credibility of an individual's statements is their consistency, both internally and with other information in the case record....  Especially important are statements made to treating and examining sources and to the 'other sources....'"  SSR 96–7p.  This was a clear and convincing reason to find plaintiff's statements less than credible.  Regardless of whether plaintiff's headaches were a chronic condition, if she were having severe headaches at the frequency she claims, it is reasonable to assume that she would have frequently mentioned them when describing her overall general health to her PCP.  The fact that she did not calls into question the credibility of her contention that she had frequent, severe headaches.

The sixth reason given by the ALj was that the "objective findings in the record do not confirm the claimant's allegations."[54]  The ALJ noted that plaintiff "has reported that

---

[53]Admin. Rec. at 17.

[54]Admin. Rec. at 17.

she believes that her headaches are caused by nerve pain.  However, no diagnostic testing in the record confirms this."[55]  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Here, there is no objective evidence in the record that supports plaintiff's subjective testimony regarding her headaches.  Thus, this was a clear and convincing reason to find plaintiff's statements less than credible.

Conclusion

Based on the foregoing, the Commissioner's decision is affirmed.  The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 12th day of January, 2015.

/s/ H. Russel Holland
United States District Judge

---

[55]Admin. Rec. at 17.